**Hyatt MOSER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–91–00310–CR.**

Court of Appeals of Texas, El Paso.

June 3, 1992.

---

**198**

Roger L. Moore, El Paso, for appellant.

Joe Lucas, County Atty., El Paso County Courthouse, El Paso, for appellee.

Before OSBORN, C.J., and BARAJAS and LARSEN, JJ.

## OPINION

BARAJAS, Justice.

This is a consolidated appeal from a judgment of conviction for interference with delivery of water under contract in violation of Tex.Water Code Ann. § 11.091.

1. Appellant was adjudged guilty on seven distinct violations of Tex.Water Code Ann. § 11.-091, with punishment being assessed by the trial court in each cause at six-months' confinement and a $100 fine, each to run concurrently with the remaining six. *See Moser v. State of Texas,* Nos. 08–91–00311–CR, 08–91–00312–CR, 08–91–00313–CR, 08–91–00314–CR, 08–91–00315–CR and 08–91–00316–CR.

The trial court assessed punishment at six-months' confinement and imposed a $100 fine.[1] We reverse and render a judgment of acquittal.

The sole issue presented in this appeal is whether there is sufficient evidence to support Appellant's conviction. Resolution of this issue necessarily entails a discussion of both the elements necessary to prove a violation of Section 11.091 and the facts presented to the trial court.

At the outset, Section 11.091(a) of the Texas Water Code provides that "no person may wilfully take, divert, appropriate, or interfere with the delivery of conserved or stored water under Section 11.042 of this code." Tex.Water Code Ann. § 11.091(a) (Vernon 1988).[2] According to the State, Appellant violated this section because Appellant "wilfully and knowingly" diverted and interfered with the delivery of conserved water. Specifically, in its information, the State alleged:

> [T]hat on or about March 30, 1990, Hyatt Moser did then and there wilfully and knowingly divert and interfere with the delivery of conserved water to wit: Defendant obstructed a portion of a ditch located in the vicinity of *12205 Sugden* in El Paso County, Texas, by filling in said ditch with dirt, soil and earth-fill, and said Defendant did interfere with the delivery of conserved water in El Paso County, Texas, in violation of V.T.C.A., Water Code Section 11.091.... [Emphasis in original].

Based on this information, the State was required to prove beyond a reasonable doubt that Appellant: (1) wilfully and knowingly; (2) diverted and interfered; (3) with the delivery; (4) of conserved water.

## I. SUMMARY OF THE EVIDENCE

The facts pertaining to Appellant's conviction are somewhat complicated. Such

2. Section 11.042 of the Texas Water Code provides, as in this case, that an irrigation district who supplies stored or conserved water may use a stream to convey water from the place of storage to the place of use. *Id.* at § 11.042.

facts are less complicated, however, if one is able to visualize the geographical setting in which the events transpired. Consequently, a diagram of the geographical area is attached as an appendix.[3]

Appellant owns property that runs parallel to Sugden Road in El Paso County. At the edge of Appellant's property and adjacent to Sugden Road is a community ditch which transports water to all adjacent property owners.[4] The water from this community ditch is used by Appellant to irrigate a one and one-half acre alfalfa field in the southeast corner of his property.

Immediately west of the alfalfa field is Appellant's driveway which crosses over the community ditch. Water flows underneath Appellant's driveway through a 18-inch pipe, and the community ditch continues beyond this pipe to near the western edge of Appellant's property and the dead end of Sugden Road. Located shortly before the end of the community ditch is a small ditch. This small ditch angles to the northwest across into Appellant's property for approximately 70 feet. The water transported in the small ditch exits at the western edge of Appellant's property—the point at which the small ditch ends.

To the west of Appellant's property lies property owned by Aguilar. North of Aguilar lies property owned by Patrick. Because Aguilar and Patrick are not adjacent to the community ditch, the only way they can receive irrigation water is through the small ditch which traverses Appellant's property. Consequently, underneath Aguilar's driveway is a 12-inch pipe which is designed to facilitate the transportation of water from the small ditch.

In the instant case, the controversy arose because the irrigation district's water schedule of releasing water for Appellant differed from the scheduled irrigation for adjoining landowners Aguilar and Patrick. When Appellant was scheduled to irrigate his alfalfa field which fronts the community ditch, it was necessary to obstruct the ditch to prevent loss of the water at the 18-inch pipe lying beneath his driveway. Appellant obstructed the flow of water by placing a removable piece of metal. Due to the nature of the irrigation system, some seepage would naturally occur beyond the point at which the earthen ditches are obstructed.

As a secondary measure to prevent loss of water onto Aguilar's property, Appellant constructed a device in the small ditch which crosses his property. The measure consisted of another 18-inch pipe surrounded by cinder brick and concrete in front of which could be placed an obstruction to prevent additional seepage.

When Aguilar and Patrick were scheduled to irrigate, the above obstructions were removed in order to permit the flow of irrigation water so that Aguilar and Patrick could receive their allotted water. Initially, this system worked without controversy, but soon technical and physical difficulties in maintaining such an operation were exacerbated by personality conflicts between the parties. Due to such conflicts, Appellant ultimately refused to remove the obstruction at the second 18-

---

3. The attached appendix is merely our representation of the geographical area based on our interpretation of the facts contained in the record. Consequently, we include the appendix merely for illustrative purposes with no intent that it be interpreted as being drawn to scale.

4. The community ditch is controlled by the El Paso County Water Improvement District Number One. This irrigation district delivers water to 32,000 accounts in El Paso County. The irrigation system consists of over 600 combined miles of canals, laterals, sublaterals and drains. Water from the Rio Grande is stored in the Elephant Butte and Caballo reservoirs in the State of New Mexico and ultimately feeds the Franklin Canal in El Paso County. Quantities of this conserved water in the Franklin Canal are diverted into the Ysla lateral by an accurately-controllable headgate, allowing the water to flow approximately seven miles into a small concrete reservoir at the point of the lateral's termination. At the northern end of the Ysla lateral are three earthen community ditches which carry the water through "turnouts" to the north, east or west. The "turnouts" from the reservoir are large square concrete holes, approximately two feet in width, which are regulated by sliding, loosely-fitting metal plates. Proper regulation of the rate of water flow through each of these "turnouts" and into each of the appropriate community ditches is difficult and inaccurate at best.

inch pipe in the ditch on his property.[5] As a consequence, the irrigation district filed criminal charges against Appellant pursuant to Tex.Water Code Ann. § 11.091 (Vernon 1988) for failing to remove the obstruction from the second pipe.

## II. DISCUSSION

In his first point of error, Appellant asserts that "[t]here was no taking, diverting, appropriating, or interfering with the delivery of conserved or stored water under Section 11.042" of the Texas Water Code. At the outset, we note no reported cases regarding criminal convictions stemming from this statute. Accordingly, this is a case of first impression.

Liberally construing Appellant's point of error and his argument contained therein, as we are required to do, Appellant's first point of error is best characterized as a challenge to the sufficiency of the evidence to support the judgment of conviction. To the extent that we find the evidence is insufficient to prove that Appellant unlawfully interfered with the *delivery* of the water, we agree.

### A. *Standard of Review*

■ We are constrained to view all the evidence in a light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime as alleged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Stoker v. State,* 788 S.W.2d 1, 6 (Tex.Crim.App.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). Instead, an appellate court is only "to determine if any rational trier of fact could have, based on the evidence admitted at trial, found the essential elements of the offense beyond a reasonable doubt." *Fernandez v. State,* 805 S.W.2d 451, 456 (Tex.Crim.App.1991).

### B. *Necessary Proof*

■ As noted earlier, to obtain a conviction for violation of Section 11.091, it was incumbent upon the State to prove beyond a reasonable doubt that Appellant (1) wilfully and knowingly; (2) diverted and interfered; (3) with the delivery; (4) of conserved water. At trial, Appellant admitted that he *wilfully and knowingly* blocked the ditch which crosses his property at the time alleged in the information. The record also reveals that Appellant's obstruction of the ditch served to *divert and interfere* with the adjoining landowners' anticipated receipt of *conserved water* as scheduled by the irrigation district. Based on such evidence, we conclude the State satisfied its burden of proof in regard to the first, second and fourth elements of the offense. Proof of the third element, however, is not so apparent.

■ Delivery, which is the third element of the offense, necessarily implies an authorized delivery. In other words, Appellant must have diverted or interfered with an authorized delivery of conserved water. A delivery is authorized if the manner employed to transport the water is carried out pursuant to a legally-enforceable right. Conversely, a delivery is unauthorized if there is no legally-enforceable right to transport the water in a particular manner. In the instant case, the pivotal question is whether the irrigation district, Aguilar and Patrick had a right to have the conserved water delivered across Appellant's land. If no right existed, a rational trier of fact could not find, beyond a reasonable doubt, that the third element was established.

■ Section 11.043(a) (Vernon 1988) of the Texas Water Code requires that an interest in a ditch, canal, reservoir or other irrigation work "must be executed and acknowledged in the same manner as a conveyance of real estate." The conveyance must also be recorded in the county where the irrigation work is located. Section 11.-043(a). Compliance with this section is nec-

---

5. Appellant has claimed that Aguilar's and Patrick's use of the irrigation system which crosses his land served to flood his driveway on Sugden Road, as well as his alfalfa field. As a consequence, Appellant has filed a civil suit for damages.

essary in order for the delivery across Appellant's land to be authorized.[6] However, there is nothing in the record to indicate that either the irrigation district, Aguilar or Patrick had obtained a legally-enforceable interest in the small ditch that traverses Appellant's property. Thus, even though Aguilar and Patrick enjoyed a right to the delivery of irrigation water, neither property owner had a legally-enforceable interest in the small ditch which was used to transport the water.

While the general manager of the irrigation district testified that it was not uncommon for a community ditch to extend through private property as opposed to following property lines, such evidence does not establish such an enforceable right in the instant case. Moreover, the record indicates that it is possible for the Sugden Road community ditch to be extended around Appellant's property to provide water to the adjoining landowners.

We recognize the record indicates that, in the early 1980's, Appellant's predecessors-in-interest agreed to allow Aguilar's and Patrick's predecessors-in-interest to construct the ditch as it currently lies across Appellant's property for the purpose of obtaining irrigation from the Sugden Road community ditch. However, nothing in the record indicates the conveyance of the interest in the ditch or use thereof was accompanied by the necessary execution and recording procedures required by Tex.Water Code Ann. § 11.043(a). To the contrary, the record establishes that the title to Appellant's property is not encumbered by such an easement in favor of any adjoining landowners.

■ As a subsequent purchaser in good faith, the "conveyance" of the interest in the ditch and use thereof is unenforceable against Appellant in relation to either Aguilar, Patrick or their predecessors-in-interest. Tex.Water Code Ann. § 11.043(b). Accordingly, we find the record is devoid of any evidence demonstrating Aguilar and Patrick were entitled to delivery of irrigation water in the manner indicated. Thus, the delivery of the water across Appellant's land was unauthorized. As a consequence, wilful interference with the delivery of the conserved water was not unlawful under these facts. Appellant's Point of Error No. One is sustained. Resolution of Appellant's first point of error renders it unnecessary to address any remaining points.

Having sustained Appellant's first point of error, the conviction is reversed and a judgment of acquittal is rendered.

---

**6.** The community ditch which fronts Appellant's property on Sugden Road was constructed and is used pursuant to a recorded easement. Patrick and Aguilar, however, do not possess property adjacent to this community ditch.

# APPENDIX

PATRICK

AGUILAR

MOSER

small ditch

COMMUNITY DITCH

driveway

12205 SUGDEN ROAD

Dead End

N