NO. 07-02-0361-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JULY 16, 2003


______________________________




RUBEN A. CORTEZ, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE



_________________________________



FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2002-438943; HONORABLE BRADLEY S. UNDERWOOD, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 Following appellant Ruben Cortez's plea of not guilty, a jury convicted him of
aggravated sexual assault and assessed punishment at five years confinement. In six
issues, appellant claims the evidence is legally and factually insufficient, and he was
denied effective assistance of counsel. Based upon the rationale expressed herein, we
affirm.

 Appellant and the victim lived together for approximately two and a half years prior
to the offense giving rise to this appeal. Together, they have a young son. Around 4:00
a.m. on December 8, 2001, the victim's mother, Minnie Hernandez, awoke to the sound
of someone banging on the front door of her house and ringing the doorbell repeatedly. 
When she answered the door, Ms. Hernandez discovered the victim, who acted "like she
was scared, like somebody was running from behind her." The victim was crying and
upset and told Ms. Hernandez, "he [appellant] hurt me." Ms. Hernandez immediately
transported the victim to the hospital where she was initially treated for injuries related to
the physical assault. During the course of her treatment, however, the victim
acknowledged, "He [appellant] made me have sex with him." 

 After hearing the victim's allegation, Carolyn Chisholm, the attending nurse, notified
law enforcement and the local rape crisis center shortly before 6:00 a.m. While waiting
for representatives from each of those agencies to arrive, Ms. Chisholm conducted a brief
interview of the victim. During the interview, the victim was "tearful," "nervous," "anxious,"
and "scared" and was shaking and crying as she spoke. The victim reported that the
trouble began around 3:00 that morning when she arrived at appellant's and her home. 
Appellant was upset because one of the victim's male friends had telephoned her earlier
in the evening. At some point during their argument over the phone call, appellant
grabbed the victim's head and began banging it on the carpet. He then kicked her, and
told her "he was going to kill her, . . . didn't care if she died, that her mom could take care
of their baby." After the beating, appellant penetrated the victim's vagina and rectum with
his penis. When asked by Ms. Chisholm whether the sexual intercourse was against her
will, the victim replied, "yes." The victim explained she was too "scared to say anything"
and "didn't tell him to stop because she was afraid he would hit her again."

 Jana Prindle was the rape crisis counselor on call on the day of the offense. When
Ms. Prindle arrived at the hospital some time after 6:00 a.m., the victim was "hysterically
crying," "very traumatized," "shaking," and "nervous." Ms. Prindle and the responding
police officer interviewed her. They learned that, at some point earlier in the morning,
appellant grabbed the victim's hair and smashed her head into a bed. During the assault,
appellant threatened to kill her and to take her baby away. The victim confirmed that
appellant penetrated her rectum, and she was "very insistent" the sexual encounter was
not consensual. Finally, the victim volunteered that she had never engaged in anal sex
before and did not want to participate in it on the night of the offense.

 Three days after the assault, Chris Bruenig, the detective assigned to investigate
the offense, phoned the victim and requested she provide a "full sworn statement" to be
included in the case file for the District Attorney's office. At that time, the victim claimed
her sexual encounter with appellant three days before was consensual. She did not,
however, deny being physically assaulted by appellant. When Bruenig contacted
appellant during the course of the investigation, he denied committing any assault against
the victim, physical or otherwise. Notwithstanding the victim's recantation, Bruenig
presented the case to the District Attorney's office, and the grand jury returned a true bill
of indictment against appellant for aggravated sexual assault.

 Appellant testified at trial and admitted physically assaulting the victim. He
explained, "I didn't know what I was doing, and I just lost control of myself." He claimed,
however, that once he "got out of that rage mode," and he and the victim began talking,
he had no intention of ever touching her again. Appellant acknowledged he intentionally
and knowingly caused the penetration of the victim's anus and used force and violence
against her. He maintained, however, that the sexual encounter with her was consensual. 

 During the State's case in chief at trial, the victim testified that her sexual relations
with appellant on December 8, 2001 were consensual. The victim explained she initially
performed oral sex on appellant, and then voluntarily engaged in vaginal and anal
intercourse with him. She also claimed to have engaged in anal sex with appellant before
the day of the offense. However, the victim acknowledged she suffered the injuries to her
mouth and tongue before performing oral sex on appellant. The victim conceded she did
not want to testify and was worried about her son not being able to see appellant if he was
convicted. The victim also testified during appellant's case in chief. When questioned
about the discrepancies between her trial testimony and the statements she made to
Hernandez, Chisholm, and Prindle on the morning of the offense, the victim claimed she
did not remember what she had said to any of them. On cross-examination by the State,
however, the victim admitted she remembered telling appellant during the assault that she
thought he was going to kill her. She also admitted she thought she was going to die. 

 By his first two issues, appellant contends the evidence is legally and factually
insufficient to show (1) the victim was compelled to consent to sex with him; and (2) he
intentionally and knowingly compelled the victim to submit to sex by the use of physical
force or violence. (1) Specifically, appellant maintains the evidence is insufficient because
both he and the victim, the only two eyewitnesses to the alleged offense, testified their
sexual encounter was consensual. We disagree. 

 The standards of review for legal and factual sufficiency of the evidence are well
established and need not be detailed. See Jackson v. Virginia, 443 U.S. 307, 319, 99
S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Johnson v. State, 23 S.W.3d 1, 11
(Tex.Cr.App. 2000); Clewis v. State, 922 S.W.2d 126, 133 (Tex.Cr.App. 1996). Before
determining whether the evidence is legally sufficient to sustain the conviction, we must
review the essential elements the State was required to prove. Appellant was indicted for
committing aggravated sexual assault in violation of section 22.021 of the Texas Penal
Code (Vernon 2003). Based upon the indictment, the trial court instructed the jury:

 . . . if you find from the evidence beyond a reasonable doubt that on or about
December 8, 2001, in Lubbock County, Texas, [appellant] did then and there
intentionally or knowingly cause the penetration of the anus of [the victim] by
[appellant's] penis, without the consent of [the victim], and [appellant] did
then and there compel [the victim] to submit or participate by the use of
physical force or violence, and [appellant] did then and there, by acts or
words, place [the victim] in fear that death or serious bodily injury would be
imminently inflicted on [the victim], then you will find [appellant] guilty of the
offense of aggravated sexual assault and so say by your verdict. 


 At the outset, we note that Hernandez's, Chisholm's, and Prindle's testimony
regarding what the victim told them on the morning of the offense was admissible under
the excited utterance exception to the rule against hearsay. Tex. R. Evid. 803(2); see
Scugoza v. State, 949 S.W.2d 360, 362 (Tex.App.-San Antonio 1997, no pet.). The
witnesses variously described the victim as "crying," "shaking," "upset," "tearful," "nervous,"
"anxious," "scared," "emotional," and "hysterical" as she related to them the physical and
sexual assaults she suffered on December 8, 2001. Furthermore, the victim herself
testified she was "upset," "crying," and "hurting" at the time she arrived at her mother's
house after the assault. Ms. Prindle and Ms. Chisholm explained that the victim's
emotional demeanor persisted throughout her sojourn at the hospital. Clearly, the victim
was still dominated by the emotions, excitement, fear, pain, and condition of the assault
at the time she made the statements to Hernandez, Chisholm, and Prindle. See Salazar
v. State, 38 S.W.3d 141, 154 (Tex.Cr.App. 2001) (citing McFarland v. State, 845 S.W.2d
824, 846 (Tex.Cr.App.)). 

 Next, we observe that Hernandez's, Chisholm's, and Prindle's testimony constitutes
direct evidence of the crime appellant committed. Cf. Fernandez v. State, 805 S.W.2d
451, 454 n.2 (Tex.Cr.App. 1991) (testimony by officer reflecting statements made by
defendant's wife prior to trial, which were recanted by wife at trial, was direct evidence
because it was "an inference from the assertion of a witness to the truth of the fact
asserted"). That direct testimony, if accepted by the jury, as it obviously was, is legally
sufficient to sustain the verdict. Cf. Scugoza, 949 S.W.2d at 363. Indeed, as factfinder,
the jury was entitled to judge the credibility of the witnesses and choose to believe all,
some or none of the testimony. Chambers v. State, 805 S.W.2d 459, 461 (Tex.Cr.App.
1991). The jury observed the victim's demeanor and heard Hernandez, Chisholm, and
Prindle testify about statements the victim made to them on the day of the offense. The
jury was entitled not only to reconcile any conflicts in the testimony, but even to disbelieve
the victim's recantation. Peters v. State, 997 S.W.2d 377, 383 (Tex.App.-Beaumont 1999,
no pet.). Furthermore, the victim's prior statements to Hernandez, Chisholm, and Prindle
have an "inherent indicia of trustworthiness" because they were "made closer in time to the
event in question." Id. We conclude a rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. The evidence is legally sufficient to
sustain the conviction.

 Evidence to support a criminal conviction may be factually insufficient in two distinct
ways. In the first, the evidence in support of the existence of a vital fact, considered as
standing alone, is factually too weak to support it. Goodman v. State, 66 S.W.3d 283, 285
(Tex.Cr.App. 2001). The second type of factual insufficiency involves a balancing scale,
where there is evidence on both sides of the question. Id. Here, three separate witnesses
testified about the victim's statements on the day of the offense that she did not consent
to sexual intercourse with appellant. Those statements strongly support the existence of
a vital fact at issue in the trial and on appeal--lack of consent. Furthermore, balancing the
evidence related to lack of consent in this case, we cannot say appellant's evidence was
so strong, so overwhelming, so much more extensive than the State's evidence that it
renders the jury's verdict so contrary to the great weight and preponderance of the
evidence that it is manifestly unjust. See id. In short, the evidence is factually sufficient
to support the verdict. Appellant's first and second issues are overruled. (2) 

 With the remaining issues, appellant claims his trial attorney was ineffective by
failing to object to Hernandez's, Chisholm's, and Prindle's hearsay statements about the
victim's allegations to them on the day of the offense. Appellant also contends his trial
attorney was ineffective in light of the alleged cumulative errors made at trial. We
disagree.

 In determining whether counsel's representation was so inadequate as to violate
a defendant's Sixth Amendment right to counsel, Texas courts adhere to the two-pronged
test enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984). See Hernandez v. State, 726 S.W.2d 53, 56-7 (Tex.Cr.App. 1986). There is a
strong presumption that counsel's conduct fell within the wide range of reasonable
professional assistance. Strickland, 466 U.S. at 690. The burden is on appellant to prove
by a preponderance of the evidence that counsel was ineffective. See McFarland v. State,
928 S.W.2d 482, 500 (Tex.Cr.App. 1996). Appellant must first prove that counsel's
performance was deficient, i.e., that his assistance fell below an objective standard of
reasonableness. Id. If appellant demonstrates deficient assistance of counsel, he must
then affirmatively prove prejudice as a result of the deficient assistance. Id. In proving
prejudice, appellant must demonstrate a reasonable probability that but for counsel's
errors, the result of the proceeding would have been different. A reasonable probability
is a probability sufficient to undermine confidence in the outcome. Hernandez, 726 S.W.2d
at 55.

 Any allegation of ineffective assistance of counsel must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged ineffectiveness. 
McFarland, 928 S.W.2d at 500. Failure to make the required showing of either deficient
performance or sufficient prejudice defeats the ineffectiveness claim. Id. Defense counsel
should ordinarily be accorded an opportunity to explain his or her actions before being
labeled as unprofessional, incompetent or ineffective. See Bone v. State, 77 S.W.3d 828,
836 (Tex.Cr.App. 2002). 

 As noted above, the hearsay testimony of Hernandez, Chisholm, and Prindle was
admissible pursuant to the excited utterance exception to the hearsay rule. Tex. R. Evid.
803(2). As a result, appellant has failed to demonstrate that his trial counsel's assistance
fell below an objective standard of reasonableness; thus, his ineffectiveness claim is
defeated. McFarland, 928 S.W.2d at 500. Furthermore, the failure to object to admissible
evidence is not ineffective assistance. Burruss v. State, 20 S.W.3d 179, 187
(Tex.App.-Texarkana 2000, pet. ref'd). Appellant's issues three, four, five, and six are
overruled.

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice



Do not publish.



 
1. Because appellant addresses the issues contemporaneously, we will do the same.
2. We conclude the evidence that establishes the victim's lack of consent is also
sufficient to demonstrate that appellant "compelled" her to consent.