**Affirmed and Memorandum Opinion filed November 17, 2016.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-15-00844-CR

_____

**HILARIO ADAMEZ RODRIGUEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 1433495**

## MEMORANDUM OPINION

We consider two questions in this appeal from a conviction for aggravated assault: (1) whether the trial court committed charge error by improperly instructing the jury on the law of self-defense, and (2) whether the trial court abused its discretion by admitting evidence of a prior felony conviction. Finding no reversible error, we affirm the trial court's judgment.

# BACKGROUND

Appellant stabbed the complainant fifteen times after an altercation at a sports bar. Each side presented a different version of the events leading up to the stabbing.

***The Complainant's Version.*** The complainant testified that she went to the sports bar with her friend, David. Some hours later, appellant arrived at the sports bar with his wife, Donna. Appellant and David were close friends, but Donna and the complainant did not get along. When the complainant announced that she was ready to leave, Donna made a comment that the complainant perceived as rude, and the complainant shoved Donna to the ground, where Donna cut her hand on broken glass. The two women were eventually separated by the bar patrons.

The complainant left the sports bar and drove herself to David's apartment, where she intended to stay the night. After arriving at the apartment complex, she realized that appellant had followed her. Appellant approached the complainant in the parking lot and asked why there was so much animosity between her and Donna. The complainant responded with profane and provocative language, generally accusing Donna of being disrespectful. According to the complainant, appellant then pulled out a knife and attacked her. The two tussled on the ground until David and his cousin pulled them apart. Appellant then attacked the complainant once more, leaving her with lacerations to her face, arms, chest, and legs.

***Appellant's Version.*** Appellant testified that he left the sports bar to pick up his two children, whom he had left in the care of David's mother at David's apartment. As appellant approached the apartment, the complainant instigated a fight by making a derogatory comment about his wife. When appellant responded to the comment, the complainant reached into her purse and pulled out a knife.

Appellant lunged at the complainant to take away the knife, fearing that she might use it against him or his children. Appellant then attacked the complainant during the struggle for the knife.

Appellant referred to a cut on his hand as evidence of a defensive wound. The prosecution characterized the cut as a result of slippage—i.e., appellant's hand slipping onto the blade of his own knife during the course of stabbing the complainant.

The jury rejected appellant's defense, convicted him as charged, and assessed punishment at fourteen years' imprisonment.

## SELF-DEFENSE INSTRUCTION

Appellant raises two complaints regarding the trial court's instruction on self-defense. In the first complaint, appellant argues that the trial court erred by not clearly explaining that the State had the burden of disproving self-defense beyond a reasonable doubt. In the second complaint, appellant argues that the trial court erred by having an application paragraph for self-defense that was separate and apart from the application paragraph for aggravated assault. Appellant did not object to these points in the trial court, but he contends that he was egregiously harmed by the trial court's errors. We examine each alleged error in turn.

***The Burden of Proof.*** The defendant bears the burden of producing some evidence in support of a claim of self-defense. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once the defendant produces such evidence, the State bears the burden of persuasion to disprove that defense. *Id.* The burden of persuasion is not one that requires the production of evidence. *Id.* Rather, it requires only that the State prove its case beyond a reasonable doubt. *Id.*

3

In this case, the self-defense portion of the charge did not specifically identify whether appellant had the burden of proving that he acted in self-defense, or whether the State had the burden of disproving that he acted in self-defense. Instead, the charge contained these two application paragraphs:

> Therefore, if you find from the evidence beyond a reasonable doubt that [appellant] did cause bodily injury to [the complainant], by stabbing [the complainant] with a knife; or by cutting [the complainant] with a knife, as alleged, but you further find from the evidence, as viewed from the standpoint of the defendant at the time, that from the words or conduct, or both of [the complainant] it reasonably appeared to the defendant that his life or person was in danger and there was created in his mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force or serious bodily injury from the use of unlawful deadly force at the hands of [the complainant], and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against [the complainant's] use or attempted use of unlawful deadly force, he stabbed or cut [the complainant] with a knife, then you should acquit the defendant on the grounds of self-defense; or if you have a reasonable doubt as to whether or not the defendant was acting in self-defense on said occasion and under the circumstances, then you should give the defendant the benefit of that doubt and say by your verdict, not guilty.

> If you find from the evidence beyond a reasonable doubt that at the time and place in question the defendant did not reasonably believe that he was in danger of death or serious bodily injury, or that the defendant, under the circumstances as viewed by him from his standpoint at the time, did not reasonably believe that the degree of force actually used by him was immediately necessary to protect himself against [the complainant's] use or attempted use of unlawful deadly force, then you should find against the defendant on the issue of self-defense.

Appellant argues that the charge should have contained a simple instruction about the burden of proof, like the Pattern Jury Charge instruction for self-defense,

4

which provides as follows: "The defendant is not required to prove self-defense. Rather, the state must prove, beyond a reasonable doubt, that self-defense does not apply to the defendant's conduct." Texas Criminal Pattern Jury Charges: Criminal Defenses § 32.2, at 184 (2015). Although an instruction of this type may have been preferable, given its simplicity, it was not necessary based on the remaining instructions in the charge.

After the instruction on self-defense, the charge provided that appellant was entitled to a presumption of innocence and that the "burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant." When these instructions are read alongside the application paragraphs for self-defense, the charge cannot be said to have placed the burden on appellant for proving that he had acted in self-defense. "Clearly, when the charge is viewed as a whole, it placed the burden on the State to show beyond a reasonable doubt that appellant was not acting in self-defense." *Luck v. State*, 588 S.W.2d 371, 375 (Tex. Crim. App. 1979).

Appellant responds that the charge must have been confusing to the jury because, during deliberations, the jury foreperson sent a note to the trial court that asked the following question: "At what point is self defense no longer defense?" The trial court gave a short response, simply instructing the jury to "please refer to the charge."

For two reasons, we conclude that the note has no bearing on the present issue. First, the note does not reference the burden of proof at all. When viewed in the context of the entire record, the note appears to reflect a concern that, if appellant had acted in self-defense, he used more force than necessary to defend himself, considering that he stabbed the complainant an inordinate number of times, and he continued his attack even after he was forcefully separated from her.

5

Second, the trial court gave a clear instruction during voir dire about the burden of proof:

| | |
|---|---|
| The Court: | Yes, sir, Juror No. 23? |
| Venireperson: | So if the Defense brings up self-defense, is it their job to prove that or the State's job just to knock it down? |
| The Court: | It's the — they have to raise it however they feel necessary. Then it's the State's job to disprove it. |
| Venireperson: | Okay. |

Not only was this venireperson impaneled on the jury, but he was also selected by his peers to be the jury foreperson. Having received a clear and direct answer during voir dire, the jury foreperson would have no reason to repeat his question to the trial court during deliberations, especially with such different wording as the kind used in the note. This voir dire discussion cuts against any suggestion that the note evidenced a question about who bore the burden of proof on self-defense.

The trial court did not err by giving the jury the self-defense instruction as written.

***Order of the Instruction.*** The charge addressed the elements of aggravated assault before the issue of self-defense. The aggravated-assault portion contained abstract and application paragraphs, which instructed the jury that it should find appellant guilty if all of the elements of the offense had been proven beyond a reasonable doubt. These instructions did not specifically reference self-defense. In the self-defense portion, which immediately followed the aggravated-assault portion, there were separate abstract and application paragraphs, which provided that the jury should acquit appellant if the jury found or had a reasonable doubt that appellant had acted in self-defense when he stabbed the complainant.

6

Appellant asserts that the order of these instructions was confusing, and he argues that a self-defense provision should have been incorporated into the aggravated-assault portion of the charge. For example, he suggests that the aggravated-assault portion should have instructed the jury to convict him if the elements of the offense were proven and the jury did not find beyond a reasonable doubt that appellant had acted in self-defense.

The Court of Criminal Appeals has already rejected the argument that a self-defense instruction must be incorporated into the application paragraph of the charged offense. *See Hernandez v. State*, 375 S.W.2d 285, 288 (Tex. Crim. App. 1963) (holding that a charge was not erroneous for having an instruction on self-defense that followed, but had not been incorporated into, an application paragraph for assault); *Ekern v. State*, 200 S.W.2d 412, 415 (Tex. Crim. App. 1947) ("The court cannot and is not required to charge all the law in each paragraph of his charge, but such charge should be taken and considered as a whole; and an ordinary jury is expected to and surely does take the charge as a whole and considers it as such."). Accordingly, we hold that the charge was not erroneous based on the order in which the self-defense instruction appeared. *See Green v. State*, 675 S.W.2d 541, 543 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd) ("Where the court, later in its charge, gives an unrestricted charge on self-defense (as was done in this case) it is not necessary in applying the law to the facts from the standpoint of the state for the court to require the jury to find the accused was not acting in self-defense.").

## PRIOR FELONY CONVICTION

The trial court allowed for appellant to be impeached with evidence of a 1999 felony conviction for assault on a public servant. Appellant argues that the trial court should have excluded this evidence because it was inadmissible under

both Rule 609 and Rule 403 of the Texas Rules of Evidence. Assuming without deciding that the evidence was inadmissible, we conclude that any error in the admission of the evidence would be subject to a harm analysis for nonconstitutional error, and under that standard, the error was harmless.

Nonconstitutional error must be disregarded unless it affects a defendant's substantial rights. *See* Tex. R. App. P. 44.2(b). An error affects a defendant's substantial rights when the error has a substantial and injurious effect or influence on the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the error had no or only a slight influence on the verdict, the error is harmless. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

When assessing harm, we consider "everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *See Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). We also consider the jury instructions given by the trial court, the State's theory and any defensive theories, closing arguments, and even voir dire, if material to the defendant's claim. *Id.*

We first note that very few details of the prior conviction were revealed during the trial. The jury heard only when appellant was convicted of the assault and the county in which he was tried. There was no testimony that appellant assaulted the public servant with a knife or in a manner similar to the facts presented in this case. Also, the State did not reference the prior conviction at all during closing statements.

The danger with appellant's prior conviction is that the offense was similar to the charged offense (both of them being assaults against a person) and the jury may have been tempted to convict him of the charged offense based on a pattern of

8

past conduct. However, we are not persuaded that the prior conviction had this substantial and injurious effect. Appellant admitted that he attacked the complainant. The main issue for the jury to decide was whether appellant had acted in self-defense, and on that point, there was strong evidence to suggest that appellant was the initial aggressor.

The evidence showed that the complainant pushed appellant's wife, Donna, when they were both at the sports bar. Donna fell to the ground during this altercation, and she cut her hand on broken glass. The jury could have reasonably concluded that appellant was enraged by the attack against Donna, and that he responded by pursuing the complainant to a different location and attacking her in retaliation.

Of course, appellant denied that he was the aggressor, and he claimed that he suffered a defensive wound when he was forced to disarm the complainant. But appellant's wound could easily be explained by his hand slipping off the handle and onto the blade of the knife if his hand had been slickened with the blood of the complainant.

The jury also had ample reasons to reject appellant's belief that the complainant posed a threat to him. The evidence showed that appellant worked in the construction field, that he did "a lot of lifting," and that he was a "a pretty strong guy." The complainant, by contrast, was a retail manager who was both smaller and older than appellant. The evidence further showed that appellant was able to overpower the complainant. They both struggled on the ground, but he eventually got on top of her and stabbed her a total of fifteen times—an excessive number. Moreover, at least one of the stabbings occurred after appellant had been forcefully separated from the complainant by two other men.

The State presented a strong case that appellant assaulted the complainant as the initial aggressor, and appellant's claim that he had acted in self-defense was comparatively weak. If the evidence of appellant's prior conviction had any influence on the jury's verdict, the influence was slight and therefore harmless.

## CONCLUSION

The trial court's judgment is affirmed.

/s/    Tracy Christopher
Justice

Panel consists of Justices Boyce, Christopher, and Brown.
Do Not Publish — Tex. R. App. P. 47.2(b).